BRENT M. RESH
(Nevada Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, pro hac vice pending)
J. RAE LOVKO
(Cal. Bar No. 208855, pro hac vice pending)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>INTERIOR BOARD OF LAND APPEALS, UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and KG MINING INC.,<br><br>*Defendants*. | CASE NO.<br><br>**PETITION FOR REVIEW** |

Plaintiffs WILD HORSE EDUCATION and LAURA LEIGH seek judicial review of the order issued by the INTERIOR BOARD OF LAND APPEALS (IBLA) on September 23, 2024, in WILD HORSE EDUCATION ET AL., IBLA 2024-0229. Plaintiffs initially filed their IBLA case to appeal and petition for a stay of the July 8, 2024 Record of Decision (ROD) issued by the Ely District Manager, Bureau of Land Management (BLM). In the ROD, BLM approved the Bald Mountain Mine Plan of Operations Amendment Juniper Project (Juniper Project). WILD HORSE EDUCATION, a non-profit corporation, LAURA LEIGH, and Tammi Adams, a member of Wild Horse Education, appeared pro se before the IBLA. For the foregoing reasons, the order issued by IBLA (IBLA Order) dismissed Plaintiffs' appeal and petition, erroneously concluding that Plaintiffs lacked standing. Plaintiffs ask this Court to vacate the IBLA Order and remand this matter to the IBLA for consideration on the merits of Plaintiffs' claims.

**JURISDICTION AND VENUE**

1. Decisions of the IBLA are final decisions of the Secretary of the Interior. See Nat'l Parks & Conservation Ass'n v. BLM, 606 F.3d 1058, 1064 (9th Cir. 2010); IMC Kalium Carlsbad, Inc. v. IBLA, 206 F.3d 1003, 1009-10 (10th Cir. 2000).

2. This Court has jurisdiction over the subject matter of this action pursuant to 5 U.S.C. §§ 704 and 706, 28 U.S.C § 1331, and 28 U.S.C. § 1361.

3. Venue is proper in this district court pursuant to 28 U.S.C. § 1391. IBLA, BLM, and KG MINING, INC. (KG Mining) have sufficient contacts to subject them to personal jurisdiction in this district.

**PARTIES**

4. Plaintiff Wild Horse Education is a national non-profit corporation dedicated to research, journalism, and public education concerning the activities and operations of federal and state management of the free roaming horse and wild burro populations. Wild Horse Education's principal place of business is 216 Lemmon Drive, #316, Reno, NV 89506. Wild Horse Education has more than 150,000 members and educates and informs the public about wild horses and burros through articles, photographs, videos, and sharing data and other information.

5. Wild Horse Education and its members advocate for and enjoy visiting wild horses in multiple herd management areas (HMAs), including HMAs in the Triple B Complex. Wild Horse Education and its members appreciate the natural beauty and behaviors of the herds in their natural environment. Wild Horse Education volunteers have attended roundups in the HMAs in Triple B Complex (including in the Triple B HMA) and regularly visit the Triple B Complex for enjoyment, documentation, and recreation.

6. Wild Horse Education frequently submits comments on Environmental Assessments and Environmental Impact Statements that may impact horse and wild burro populations, including populations contained in the Triple B Complex. Wild Horse Education's advocacy for wild horses in the Triple B Complex is a past, present, and future important issue for the organization and its members.

7. Plaintiff LAURA LEIGH, a resident of Nevada, is the Founder and President of Wild Horse Education. She also is a free-lance photojournalist, whose work has appeared internationally in media broadcast outlets, such as CNN, BBC/ITV, ABC, Common Dreams, and CounterPunch.

8. Ms. Leigh documents and enjoys wild horses in the Triple B Complex, including those in the Triple B HMA. Since 2011, she has visited the Triple B Complex on a monthly basis, and she intends on continuing this visitation pattern in the future.

9. As a result of her visits, Ms. Leigh has come to know many of the wild horses in the Triple B Complex from their birth.

10. Wild Horse Education member Tammi Adams began volunteering with Wild Horse Education in 2020 and now serves as the NEPA Program Coordinator in support of Wild Horse Education's mission to protect wild horses and burros. She has a lifelong deep and long-standing interest in wild horses and burros and has been documenting and enjoying them since 1982, including the wild horses and burros in Nevada HMAs.

11. Ms. Adams has visited the Triple B Complex wild horses on multiple occasions over the years, most recently in April of 2024. She plans to visit wild horses in the Triple B

Complex and nearby HMAs within the year and into the future.

12. Ms. Adams's visual enjoyment of the Triple B HMA has been irreparably harmed by the Mine and will be further harmed by the Mine's expansion as provided for in the approved Jupiter Project.

13. Plaintiffs have a strong interest in the wild horses (a public resource) and the habitat and resources required for their survival.

14. Plaintiffs actively participated in the public scoping and public commenting process for the Juniper Project. Also, Ms. Leigh met in-person with BLM District Manager, Robbie MacAboy, in August of 2022 to discuss mitigation strategies, such as repatriation of Herd Area territory conjoining the disturbance area, water improvements, and fence removal due to the impacts of the Juniper Project expansion.

15. Plaintiffs intend to continue regular visits in 2024 and beyond, documenting and enjoying wild horses in the HMAs of the Triple B Complex (including the Triple B HMA), as well as adjacent herd areas. The cumulative impacts associated with the Juniper Project will adversely affect the substantial recreational, aesthetic, and conservational interests of Wild Horse Education's members, volunteers, supporters, founder, and staff by impacting the Triple B Complex's wild horses, habitat, rangeland health, and water resources.

16. Defendant IBLA is an appellate review body within the U.S. Department of the Interior. Defendant IBLA has review authority over BLM decisions.

17. Defendant BLM is charged by federal statute with managing, administering, and protecting the wild horses and burros in the United States, including the Triple B Complex, pursuant to the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. §§ 1331-1340 (WHA). Defendant BLM also is charged with preventing unnecessary or undue degradation of public lands by mining operations pursuant to the Mining Law of 1872 and BLM's associated regulations, 43 C.F.R. § 3800 et seq.

18. KG Mining operates the Bald Mountain Mine (Mine), a large-scale, open-pit gold mine located primarily on lands administered by BLM in or near White Pine County, Nevada.

# GENERAL ALLEGATIONS OF FACTS

## A. IBLA's Administrative Review Process

19. "Any party to a case who is adversely affected by a decision of [BLM] has the right to appeal to [IBLA]." 43 C.F.R. § 4.410(a).

20. The "party to a case" requirement is satisfied when an appellant has "participated in the process leading to the decision under appeal," such as "by commenting on an environmental document." *Id.* at § 4.410(b).

21. The "adversely affected" requirement is satisfied when an appellant shows that it "has a legally cognizable interest, and the decision on appeal has caused or is substantially likely to cause injury to that interest." *Id.* at § 4.410(d).

22. A legally cognizable interest exists where an individual's "aesthetic and recreational values" for public lands and their resources are "lessened" by the challenged action or project. *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000). To establish this, an individual need only show "a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable -- that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction -- if the area in question remains or becomes environmentally degraded." *Id.*

23. Specific to actions that involve injury to wild horses on public lands, an individual need only show that s/he has "visited the herd area and observed and interacted with the herd with clear intent to continue to do so." *Bassler*, 197 IBLA 280, 284-85 (2021).

24. An organization has standing to bring suit on behalf of its members when: 1. its members would otherwise have standing to sue in their own right (representative standing); or 2. the interests the organization seeks to protect are germane to the organization's purpose (organizational standing). *See Am. Wild Horse Campaign*, 198 IBLA 1, 5 (2022); *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

25. Organizational standing exists where the challenged violation results in an impairment of the organization's ability to fulfill its mission or has resulted in a diversion of

resources from other activities of the organizations. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017); *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011).

### B. The Mine and Jupiter Project

26. The Mine uses mechanical, open pit mining methods to excavate leach ore and waste rock from open pits. The leach ore and waste rock are loaded in haul trucks for transport via haul roads to their respective destinations, which include rock disposal areas (RDAs) and heap leach facilities (HLFs).

27. Rock is drilled and blasted for excavation using ammonium nitrate and fuel oil or other appropriate blasting agents. One blast per day is conducted in each active pit, and two or three pits are active at any given time.

28. Primary equipment used for open pit mining include pre-split and production drills, hydraulic and/or wire rope electrical shovels, and haul trucks. Other mobile equipment includes loaders, dozers, graders, track-hoes, and water trucks.

29. Mining operations are conducted up to 24 hours per day/365 days a year.

30. In 2020, KG Mining proposed to amend its plan of operations for the North Operations Area (NOA) of the Mine. The area impacted by this proposal overlaps with the Triple B HMA.

31. The Triple B HMA is 1,232,717 acres and is part of the 2,059,987-acre Triple B Complex, which contains the Triple B, Maverick-Medicine, and Antelope Valley HMAs. Wild horses move freely throughout the Complex and the adjacent Cherry Springs Wild Horse Territory (WHT), which is managed by the U.S. Forest Service.

32. To analyze the environmental impacts of this proposed amendment, referred to as the Juniper Project, BLM prepared a draft EIS. BLM released the draft EIS for public review and subsequently issued a Final EIS. Based upon the Final EIS, BLM issued the ROD approving the Juniper Project.

33. The Juniper Project is within the authorized NOA Plan boundary, which consists of 31,572 acres, and its adoption provides for expansion of the NOA Plan boundary in five areas by 3,425 acres (totaling approximately 34,997 acres).

34. The thousands of acres impacted by the Jupiter Plan contain some of the most prolific rangeland, habitat, and resources found in the Triple B Complex.

35. The Juniper Project also will expand or modify seven open pits. Other aspects include conducting planned concurrent reclamation activities, implementing a growth media stockpile management program, applying a road design strategy for haul roads, creating haul road placement zones for three haul roads, reestablishing the Top Pit underground mine, creating a sequencing and backfill schedule for the Poker Flats Pit, increasing the height of the Poker Flats heap, and reusing spent heap leach ore.

36. The Juniper Project will change total life-of-mine surface disturbance by adding 4,114 acres of new surface disturbance, reclassifying 877 acres of surface disturbance, and eliminating 145 acres of authorized surface disturbance. This will result in a net addition of about 3,969 acres of new surface disturbance. The new total life-of-mine surface disturbance would be 14,752 acres within the extended NOA Plan boundary. BLM states that most of the proposed surface disturbances would result from development or expansion of more than a dozen rock disposal areas (RDAs) and from modification and/or development of heap leach facilities (HLFs), haul roads, interpit areas, process areas, ancillary areas, and support facilities (infrastructure).

37. The Jupiter Project extends the life of the Mine by 11 years.

38. Wild horses currently reside in the area impacted by the Jupiter Project. Wild horse gathers were conducted in the Triple B Complex, including the Triple B HMA, in 2018, 2019, and 2022 because of drought and rangeland health. These gathers have resulted in well over 14,000 wild horses and foals being permanently removed from the Triple B Complex.

39. BLM acknowledges in the EIS for the Jupiter Project that construction or modification of mine components would result in long-term or permanent surface disturbances

that remove forage otherwise available for wild horses in the Triple B HMA. BLM did not include any monitoring and mitigation measures for the Juniper Project to address this.

40. BLM estimates that surface disturbance from past, present, and reasonably foreseeable actions (including but not limited to actions associated with the Mine) impact 104,141 acres in the Triple B HMA.

41. BLM acknowledges in the EIS for the Jupiter Project that "some percentage of recreation in the study area may be for the express purpose of viewing wild horses."

42. BLM received a total of 376 comment submittals during the public comment period for the draft EIS. Among these were submittals by Plaintiffs.

43. In their comments, Plaintiffs stated that BLM was violating NEPA by failing to consider cumulative impacts to the ecosystem, ambient air, water resources, soils, groundwater, aesthetic landscape, wild horses and burros, wildlife, and human quality of life.

44. Plaintiffs also commented that the draft EIS failed to include raw data relied upon by BLM in evaluating environmental impacts.

45. Specific to wild horses and burros, Plaintiffs stated that the EIS had not provided any data or analysis on the amount of forage that would be lost to Triple B Complex wild horses as a result of the Jupiter Project's approval. BLM also did not adequately address or provide for road safety measures for wild horses and burros, noting that multiple vehicular crashes already have occurred in the area. (Since 2016, at least 15 collisions with wild horses have been reported on roads used by mine-related traffic to access the NOA.)

46. Plaintiffs commented that BLM's disregard for the welfare and management of the wild horses in the Triple B Complex was evident by the agency's failure to create any up-to-date wild horse herd management area plans (HMAPs), which would provide provisions and plans for monitoring the Complex's HMAs. HMAPs also assist BLM in ensuring that proper mitigation measures are addressed when wild horses may be impacted by new projects.

47. In their environmental review of the Jupiter Project, BLM identified and considered habitat management plans (HMPs) for other wild, free-roaming grazing ungulates,

and BLM provided mitigation for migration corridors of mule deer. Yet, BLM conducted no such review for wild horses in the Triple B HMA or Triple B Complex, and BLM provided no mitigation measures for wild horses.

### C. The IBLA Case

48. In assessing the appropriate level of NEPA review, agencies must determine whether to rely upon an Environmental Impact Statement (EIS) or an Environmental Assessment (EA). An EIS is appropriate for major actions that are likely to significantly affect the quality of the human environment. *See* 42 U.S.C. § 4332(C); 40 C.F.R. § 1501.3(a). An EA is appropriate where there is not likely to be a significant effect or the significance of the effects is unknown. *See* 40 C.F.R. § 1501.3(a).

49. BLM developed an EIS for the Jupiter Project, and the ROD adopting the Project was issued on July 8, 2024.

50. On August 14, 2024, Plaintiffs appealed and petitioned to stay the ROD for the Jupiter Project, alleging that approval was improper under NEPA and the WHA because BLM did not first craft any HMAPs for the Triple B Complex or Triple B HMA, and BLM did not adequately consider and assess cumulative impacts to the wild horses, habitat, rangeland health, and water resources. Plaintiffs further stated that BLM's approval of the Jupiter Project was based on missing, inadequate, limited, and anecdotal/out-of-date information.

51. The appeal and petition were accompanied with facts establishing standing for LAURA LEIGH, Tammi Adams, and Wild Horse Education.

52. In August of 2024, BLM and KG Mining each filed motions to dismiss based upon lack of standing, to which Plaintiffs responded.

53. The IBLA Order issued on September 23, 2024 granted the motions to dismiss and dismissing the appeal for lack of standing. IBLA found that LAURA LEIGH, Tammi Adams, and Wild Horse Education were parties to the case but held they were not adversely affected. Specifically, the IBLA found that neither LAURA LEIGH nor Tammi Adams demonstrated they had visited or viewed wild horses at or near the Mine or on the public lands

that may be affected by the Juniper Project.

54. As a result of the dismissal, Wild Horse Education's petition for stay also was denied based on IBLA's lack of jurisdiction to rule on it.

## CLAIM FOR RELIEF

### Administrative Procedure Act, 5 U.S.C. § 706(2)

55. Plaintiffs hereby incorporate all previous allegations contained in this Petition as though fully set forth herein.

56. The APA provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

57. The APA further provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

58. The APA provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The reviewing court shall also "hold unlawful and set aside agency action, findings, and conclusions" that are

> A. Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> B. Contrary to constitutional right, power, privilege, or immunity;
> C. In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> D. Without observance of procedure required by law;
> E. Unsupported by substantial evidence in a case reviewed on the record

of an agency hearing provided by statute; or
F. Unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court.

5 U.S.C. § 706(2).

59. The IBLA made the following errors, *inter alia*, in the IBLA Order:

1. Erroneously failed to recognize that Ms. Leigh's connection with the Triple B Complex specifically includes visits and interactions with horses within the Triple B HMA;

2. Erroneously failed to recognize that the horses in the Triple B HMA move freely throughout the Triple B Complex and neighboring areas;

3. Erroneously failed to recognize that Tammi Adam's connection with the Triple B Complex and Triple M HMA;

4. Erroneously failed to recognize that WHE's representative and organizational standing;

5. Erroneously failed to consider the impact of procedural errors in the BLM's environmental review of the Jupiter Project on Plaintiffs' legally cognizable interests;

6. Erroneously interpreted and/or misapplied the effect of BLM's ROD adopting the Jupiter Project on Plaintiffs' legally cognizable interests; and

7. Erroneously interpreted and/or misapplied federal law (including caselaw) regarding the "adversely affected" requirement of standing.

Accordingly, the IBLA Order is: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and/or (f) unwarranted by the facts to the extent that the facts are subject to trial *de novo*. 5 U.S.C. § 706(2).

**PRAYER FOR RELIEF**

THEREFORE, Plaintiffs respectfully requests that this Court:

A. Declare that the IBLA's Order is: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations,

or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and/or (f) unwarranted by the facts to the extent that the facts are subject to trial *de novo*. 5 U.S.C. § 706(2).

B. Hold unlawful and set aside the IBLA Order pursuant to Section 706(2) of the Administrative Procedure Act.

C. Reverse and remand with instructions for IBLA to deny BLM's and KG Mining's motions to dismiss in WILD HORSE EDUCATION ET AL., IBLA 2024-0229.

D. Award Plaintiffs attorney fees and costs pursuant to and 28 U.S.C. § 2412; and

E. Grant such additional and further relief to which Plaintiffs may be entitled.

DATED:                                        Respectfully Submitted,

/s/ *Brent M. Resh*
BRENT M. RESH
(Nevada Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

/s/ *J. Rae Lovko*
JESSICA L. BLOME
(Cal. Bar No. 314898, pro hac vice pending)
J. RAE LOVKO
(Cal. Bar No. 208855, pro hac vice pending)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com